Frank W. O'CONNELL, Appellant–
Respondent,

v.

Jennifer L. O'CONNELL,
Appellee–Petitioner.

No. 29A04–0712–CV–714.

Court of Appeals of Indiana.

June 18, 2008.

Cathleen M. Shrader, Barrett & McNagny LLP, Fort Wayne, IN, Attorney for Appellant.

Douglas D. Church, Church Church Hittle & Antrim, Fishers, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Frank O'Connell ("Husband") appeals the trial court's order dissolving his marriage to Jennifer O'Connell ("Wife").

We affirm in part, reverse in part, and remand with instructions.

### ISSUES

1. Whether the trial court abused its discretion in its division of the marital estate.

2. Whether the trial court abused its discretion in valuing the marital residence and ordering that the marital residence be sold.

### FACTS

Husband and Wife cohabitated for approximately two years during which time Wife attended law school before getting married on October 16, 2004. Wife graduated from law school in May of 2004, and according to Wife, "did not work when [she] was in law school." (Tr. 55). Wife became employed as an attorney in July of 2005. No children were born of the relationship.

Prior to the marriage, Husband had checking and savings accounts at Fifth Third Bank. Upon the marriage, Husband converted his accounts to joint accounts with Wife, creating a joint checking account (the "5/3 Joint Checking Account") and a joint savings account (the "5/3 Joint Savings Account") at Fifth Third Bank. Wife maintained individual checking ("Wife's 5/3 Checking Account") and savings accounts ("Wife's 5/3 Savings Account") at Fifth Third Bank prior to the marriage; Wife continued to hold these accounts during the marriage.

Wife owned a Pontiac Grand Am (the "Pontiac") prior to the marriage. During the marriage, Wife traded in the Pontiac for a 2005 Jeep Grand Cherokee (the "Jeep"). Wife also owned a life insurance policy (the "Insurance Policy") purchased from Prudential Financial by Wife's parents in 1989. Husband acquired a jet ski

and trailer prior to the marriage. During the marriage, Husband utilized a vehicle provided by his employer. Also during the marriage, Wife invested approximately $4,400.00 in a parking lot.

During their cohabitation and early in the marriage, the parties resided in a home (the "Fishers Home") purchased by Husband in 2001. Wife contributed approximately $350.00 per month toward household expenses.

Husband sold the Fishers Home fourteen months after the marriage, realizing a profit of $26,255.43. In 2005, the parties purchased a home in Noblesville (the "Marital Residence") for $277,000.00. Wife subsequently moved from the marital residence in April of 2007.

Wife filed a petition for dissolution of marriage on March 14, 2007. The trial court held a final hearing on August 7, 2007, and Wife requested special findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52.

During the hearing, Wife testified that she believed the parties' assets should be divided equally. The trial court admitted into evidence Wife's exhibit, summarizing the parties' assets. The exhibit included the assets' values as of the date of the marriage ("DOM") and as of the date of the filing of the petition for dissolution ("DOF"), as well as the values accrued during the marriage. Several of the assets were financial and retirement accounts, held jointly and individually. Furthermore, the parties had acquired several of the assets prior to the marriage.

Husband's retirement accounts, including the DOM values, DOF values and the appreciation during marriage included the following:

| Description | DOM Value | DOF Value | Appreciation During Marriage |
|---|---|---|---|
| Edward Jones Roth IRA | $ 6,497.00 | $21,211.05 | $14,714.05 |
| Edward Jones Trad'l IRA | $22,942.55 | $31,327.37 | $ 8,384.82 |
| American Funds IRA | $ 5,950.71 | $ 8,682.38 | $ 2,731.67 |
| Boehringer Ingelheim Retirement Savings Plan ("RSP") | 0 | $18,053.00 | $18,053.00 |
| Boehringer Ingelheim Retirement Accumulation Plan ("RAP") | 0 | 0 | 0 |
| Total | $35,390.26 | $79,273.80 | $43,883.54 |

Wife's retirement accounts, including the DOM values, DOF values and the appreciation during marriage included the following:

| Description | DOM Value | DOF Value | Appreciation During Marriage |
|---|---|---|---|
| Fidelity Stock | $40,443.52 | $36,893.02 | -$3,550.50 |
| American Funds Pension | 0 | $ 3,675.95 | $3,675.95 |
| Total | $40,443.52 | $40,568.97 | $ 125.45 |

Wife agreed that the depreciation in the Fidelity Stock was a reflection of market conditions.

Wife testified that the DOF values of the 5/3 Joint Checking Account and the 5/3 Joint Savings Account were $12,114.97 and $30,375.39, respectively. Wife conceded

that Husband contributed pre-marital monies in the amount of $2,000.00 to the 5/3 Joint Checking Account and approximately $27,000.00 to the 5/3 Joint Savings Account. Wife testified that she withdrew $9,000.00 [1] from her KeyBank Money Market Account ("Wife's KeyBank Account"), which she deposited into either the 5/3 Joint Checking Account or the 5/3 Joint Savings Account.

The trial court admitted into evidence the values of Wife's 5/3 Checking Account, Wife's 5/3 Savings Account, and Wife's KeyBank Account, as follows:

| Description | DOM Value | DOF Value | Appreciation During Marriage |
|---|---|---|---|
| Wife's 5/3 Savings Account | $ 656.26 | $ 2,617.58 | $1,961.32 |
| Wife's 5/3 Checking Account | $ 2,583.57 | $ 322.82 | -$2,260.75 |
| Wife's KeyBank Account | $28,844.02 [2] | $24,882.15 | -$3,961.87 |
| Total | $32,083.85 | $27,822.55 | -$4,261.30 |

The trial court admitted into evidence that the trade-in allowance for the Pontiac was $4,000.00 and that the purchase price of the Jeep—after receiving credit for the trade-in—was $20,488.31. Wife opined and offered that the current value of the Jeep was $12,715.00. The trial court admitted into evidence that as of the date of the filing of the petition for dissolution, Chrysler Financial held a lien on the Jeep in the amount of $11,978.33, for a net value of $736.67. Wife, however, argued that she incurred a deficit in the amount of $3,263.00 [3] as a result of trading in the Pontiac.

Wife testified that the Insurance Policy's DOM cash value was $2,164.63 and the DOF cash value is $3,113,86, resulting in an appreciation during the marriage in the amount of $949.23. Wife opined that there was no equity in the parking lot. Regarding Husband's jet ski and trailer, Wife offered, and the trial court admitted into evidence, that the jet ski had a DOF value of "[a]pproximately $2500." (Tr. 32). Wife designated this value as value accrued entirely during the marriage.

Husband testified that he applied $9,290.00 of the profits from the sale of the Fishers Home to the Marital Residence. Additionally, Husband testified that both parties contributed $2,500.00 toward the Marital Residence's down payment. The trial court admitted into evidence that Chase Home Finance held a first mortgage on the Marital Residence in the amount of $218,339.00 and that Countrywide Bank held a second mortgage on the Marital Residence in the amount of $41,006.80.

Wife testified that the parties made upgrades and improvements to the Marital Residence and opined that the Marital Residence was "worth approximately $330,000." (Tr. 35). Husband opined that the Marital Residence was worth $229,000.00.

1. The trial court admitted into evidence that Wife withdrew $5,000.00 prior to the marriage and the remainder $4,000.00 after the marriage.

2. The $28,844.02 reflects the value of Wife's KeyBank Account subsequent to the withdrawal of the $5,000.00 but prior to the withdrawal of the $4,000.00.

3. $4,000 (trade-in allowance)-$736.67 (Jeep's net value) = $3,263.33.

Regarding their personal property, Wife agreed that she had "taken everything out of the house that [she]'d like to have set aside to [her.]" (Tr. 39). Wife valued her portion of the personal property at $3,750.00 and Husband's portion at $11,250.00. Husband valued the total personal property at $15,000.00.

Wife agreed that in dividing the marital property, she wished to "let [Husband] keep the things that were his before the marriage," while she would "keep the things that were [hers] before the marriage...." (Tr. 47). Husband also agreed that he was requesting that he be able to keep "the assets that [he] brought into the marriage," and Wife keep "the assets that she brought into the marriage...." (Tr. 147).

On September 11, 2007, the trial court entered its special findings, conclusions and judgment. The trial court found, in pertinent part, as follows:

4. Wife has been employed as an attorney with Church Church Hittle & Antrim since July 2005. In the time period immediately preceding marriage she was a full-time law student and had summer employment. In the months prior to employment as an attorney in July of 2005, Wife was temporarily employed by her family's business as a cost accountant.

5. Husband has been employed in sales since prior to the parties' marriage. Approximately one (1) month prior to marriage, Husband began his current employment with Boehringer Ingelheim Pharmaceutical Company. Prior to marriage Husband's income through employment was greater than Wife's.

\* \* \*

7. Upon the parties' marriage, neither Husband nor Wife entered into a premarital agreement or any other contract in contemplation of the division of their individual assets brought into the marriage, in the event of dissolution.

8. Both parties brought significant financial resources into the marriage, which included individual investment accounts, Wife's vehicle, jewelry, sports memorabilia, and brokerage accounts.

\* \* \*

10. During the first year of the parties' marriage, Husband and Wife purchased a new vehicle, a 2005 Jeep Grand Cherokee, trading in Wife's pre-marriage vehicle. As Wife's vehicle was free from any indebtedness or any other obligation, the parties received consideration for the trade-in.... Wife received [$4,000.00] credit from the trade-in of her vehicle toward the purchase price of the parties' new vehicle.

\* \* \*

21. During the marriage, neither Husband nor Wife took an active role in their investment accounts. The accounts have simply fluctuated based on market forces. Any changes in the value of these investments during the parties' marriage is due solely to the volatility of the stock market rather than any individual skill or effort of either party.

22. There are certain items of personal property, which, because of their nature and personal significance, are treated as having no value. These included Husband's sports memorabilia collection and coin collection and the jewelry of each party.

\* \* \*

## II. PROPERTY DIVISION

24. The parties' marital estate and division thereof is as follows:

| Description | Value Accrued During Marriage | WIFE | HUSBAND |
|---|---|---|---|
| Edward Jones-Roth IRA XXX29 (H) | $ 14,714.05 | | $ 14,714.05 |
| Edward Jones-Trad. IRA XXX53 (H) | $ 8,384.82 | | $ 8,394.82 |
| American Funds-IRA (H) | $ 2,731.67 | | $ 2,731.67 |
| Boehringer-RSP T(H) | $ 18,053.00 | | $ 18,053.00 |
| Boehringer 401(k) RAP (H) | $ - | | |
| Fidelity–Stock Z05–XXXX52 (W) | ($ 3,550.50) | ($ 3,55050) | |
| American Funds Pension XXXX927 (W) | $ 3,675.95 | $ 3,675.95 | |
| 5/3 Joint Checking XXXXXXX38* | $ 12,114.97 | $12,114.97 | |
| 5/3 Joint Savings XXXXXXX61** | $ 30,375.39 | $30,375.39 | |
| 5/3 Savings XXXX92 (W) | $ 1,1961.32 | $ 1,961.32 | |
| 5/3 Checking XXXX78 (W) | ($ 2,260.75) | ($ 2,260.75) | |
| 5/3 Checking (new acct) (H) Financial Decl. | $ 1,522.47 | | $ 1,522.47 |
| Keybank XXXX57/Franklin Temp (W) | ($ 3,961.87) | ($ 3,961.87) | |
| Vehicle(W) trade-in $4,000 | ($ 3,263) | ($ 3,263) | |
| Life Insurance Cash value (W) | $ 949.23 | $ 949.23 | |
| CCHA Parking Lot (W) | $ - | | |
| Jet Ski 2000 Sea Doo RX (H) | $ 2,530.00 | | $ 2,530.00 |
| FMV Marital Res. | $330,000.00 | | |
| Chase | ($218,339.00) | | |
| Countrywide | ($ 41,006.00) | | |
| Net Marital residence equity * | | | |
| Household Goods & Furnishings (H) Fin Dec | $ 11,250.00 | | $ 11,250.00 |
| Household Goods & Furnishings (W) | $ 3,750.00 | $ 3,750.00 | |
| Coin Collection (H) | | | |
| Sport Memorabilia (H) | | | |
| Jewelry (W) & (H) | | | |
| Tax Refund | $ 1,307.00 | $ 653.00 | $ 653.00 |
| TOTAL | $168,575.89[4] | $39,259.31 | $ 58,654.58 |
| | At ½ per | $84,287.95 | $ 84,287.95 |
| Due from house ** | | $ ? | $ ? |

\* The division of the net equity from the sale of the marital residence shall be in such amounts as are necessary to result in an equal division of the marital estate.

\*\* The amount required to cause each party to end up with an equal division of the marital estate upon the sale of the marital residence.

25. The marital estate shall be divided such that each party shall be entitled to receive or be responsible to pay each item listed in their respective columns, as set out above.

26. The Court finds that:

a. All of the assets of the marriage are set forth in Paragraph 24, which are set off to one party or the other, are found to be accurate as of the date of separa-

4. The correct totals for the "Value Accrued During Marriage," the amount awarded to Wife, and the amount awarded to Husband are $170,938.75, $40,443.24, and $59,839.01, respectively.

tion. The Court specifically finds that a precise determination of the market value of the various equities or mutual funds is irrelevant given the method of distribution set out hereinafter.

* * *

f. The 2006 tax refund, in the amount of $1,307.00 shall be equally divided between the parties.

27. The marital residence shall be immediately listed for sale with Keith Albrecht, a real estate broker previously agreed upon by the parties. The Court finds that the fair market value of the marital residence is approximately [$330,000.00]. The parties will not reject any bona fide offer to purchase the marital residence for a sale price of $330,000.00 or more unless the parties mutually agree, in writing, to make such rejection or to counter said offer at a higher price, or better terms. If either party is unwilling to negotiate further, then such bona fide offer shall be accepted and the residence shall be sold.

* * *

28. Upon the sale and closing of the marital residence, the ordinary and reasonable expenses of sale, including the broker's commission, shall be paid in full. Thereafter, any remaining net equity proceeds shall be divided in the amounts necessary to cause an equal division of the marital estate as illustrated in Paragraph 24 above.

31. The Court finds that Wife shall receive as her sole and separate property, the following:

a. Fidelity Stock XXXX52
b. American Funds Pension
c. 5/3 Joint Checking XXXX38
d. 5/3 Joint Savings XXXXX61
e. 5/3 Savings XXXXX92
f. 5/3 Checking XXXXX78
g. Key Bank XXXX57/Franklin Templeton
h. Life Insurance Cash Value
i. Interest in CCHA Parking Lot
j. Share of Household Goods and Furnishings
k. Wife's Jewelry
l. ½ of 2006 Tax Refund
m. 2005 Jeep Grand Cherokee
n. Share of Net Equity of Sale from Marital Residence Necessary to Result in 50/50 Distribution of Marital Estate

32. The Court finds that Husband shall receive as his sole and separate property, the following:

a. Edward Jones Roth IRA XXXX29
b. Edward Jones Traditional IRA XXXX53
c. American Funds IRA
d. Boehringer RSP
e. Boehringer 401(k) RAP
f. 5/3 Checking (new account)
g. Jet Ski and trailer
h. Sports Memorabilia
i. Coin collection
j. Share of Household Goods and Furnishings
k. Husband's Jewelry
l. ½ of 2006 Tax Refund
m. Share of Net Equity of Sale from Marital Residence Necessary to Result in 50/50 Distribution of Marital Estate

(App. 4–14).

The trial court then concluded, in pertinent part, as follows:

2. The Court concludes that in regard to the distribution of the marital estate, Husband has not proffered significant evidence in order to rebut the presumption of an equal 50/50 division. The Court concludes that there is no significant earnings disparity between the par-

ties that would justify an uneven distribution of the marital estate. In this regard, the Court further concludes that the general economic factors affecting the parties at the time include (1) Husband's income has exceeded Wife's both during the marriage as well as during the pendency of this matter, (2) the speculative nature as to whether Wife's future income will significantly exceed that of Husband, (3) the ages, health and educational background of the parties, and (4) the short duration of the marriage.

3. Considering the foregoing, the Court concludes that the marital estate should be divided equally between the parties. The Court has reviewed the provisions of I.C. 31–15–7–5, regarding the division of property and finds the determination of an equal division of the marital estate, is in accord with said statutory provisions, consideration and requirements, and thus should be adopted as the Court's decree on said issues.

4. The Court concludes that the distributive shares for each party set out above are made subject to any indebtedness which may be associated with or encumber said asset and that the party receiving said asset shall be responsible for such debt, pay the same when due, and hold the other party harmless from any liability thereon....

(App. 14–15). Finally, the trial court ordered that the Marital Residence "be immediately listed and sold for fair market value...." (App. 16).

On October 10, 2007, Husband filed a motion to correct error, asserting that he could not comply with the trial court's order to list the Marital Residence with Albrecht at the price of $330,000.00. Husband submitted Albrecht's affidavit, in which Albrecht averred:

9. Based on a study of the comparable properties and the features of the [Marital Residence], I would suggest an initial sale price anywhere from $315,234 to $323,214, which would allow room to drop the sales price as necessary to attract a buyer.

* * *

13. Having examined the [Marital Residence] and the market, it is my opinion that the [Marital Residence] will not sell at $330,000. That price is seriously overvalued for the area and the [Marital Residence] in question.

14. If the [Marital Residence] cannot be sold for less than $330,000, I will not list this property. Without any prospect of a sale, I cannot justify spending my time and money trying to sell a property with an over-inflated sales price and where the owners cannot lower the price to current market levels. However, if the owners had more flexibility to sell the [Marital Residence] at a price closer to its appraised value, I would be willing to list and market the [Marital Residence].

(App. 88–90). Husband requested that the trial court "alter, amend, or correct its prior finding that the 'fair market value' of the [Marital Residence] is $330,000, and enter a finding that the fair market value of the [Marital Residence] is $309,400"; and vacate its order "directing that the [Marital Residence] be sold at the fair market value of $330,000[.]" (App. 84). The trial court denied Husband's motion to correct error on November 9, 2007.

Additional facts will be provided as necessary.

## DECISION

When a party has requested special findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A),

we may affirm the judgment on any legal theory supported by the findings. *Wenzel v. Hopper & Galliher, P.C.*, 779 N.E.2d 30, 36 (Ind.Ct.App.2002), *trans. denied.* In reviewing the judgment, we first must determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* The judgment will be reversed if it is clearly erroneous. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *Id.* We will not reweigh the evidence or assess witness credibility. *Id.* Even though there is evidence to support it, a judgment is clearly erroneous if the reviewing court's examination of the record leaves it with the firm conviction that a mistake has been made. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Nienaber v. Nienaber*, 787 N.E.2d 450, 454 (Ind.Ct.App.2003).

## 1. *Division of Marital Estate*

Husband asserts that the trial court improperly divided the marital estate. Spe-

cifically, Husband argues that the trial court included property acquired after the date of filing of the petition for dissolution in the marital estate and failed to include all of the marital assets in the marital estate.

■ The division of marital assets is within the trial court's discretion, and we will reverse only for an abuse of discretion. *DeSalle v. Gentry*, 818 N.E.2d 40, 44 (Ind. Ct.App.2004). A party challenging the trial court's division of marital property must overcome a strong presumption that the trial court "considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal." *Id.* "We may not reweigh the evidence or assess the credibility of the witnesses, and we will consider only the evidence most favorable to the trial court's disposition of the marital property." *Id.*

■ "The division of marital property in Indiana is a two-step process." *Thompson v. Thompson*, 811 N.E.2d 888, 912 (Ind.Ct.App.2004), *trans. denied.* First, the trial court determines what property must be included in the marital estate. *Id.* Second, the trial court must then divide the marital property under the statutory presumption [5] that an equal division of

5. Regarding the division of marital property, Indiana Code section 31–15–7–5 provides:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
> (2) The extent to which the property was acquired by each spouse:
> (A) before the marriage; or

> (B) through inheritance or gift.
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
> (5) The earnings or earning ability of the parties as related to:
> (A) a final division of property; and
> (B) a final determination of the property rights of the parties.

marital property is just and reasonable. *Id.* The trial court, however, may deviate from this presumption. *Chase v. Chase,* 690 N.E.2d 753, 756 (Ind.Ct.App.1998).

▰ As to the first step, Indiana Code section 31–15–7–4(a) provides as follows:

In an action for dissolution of marriage under IC 31–15–2–2, the court shall divide the property of the parties, whether:

(1) owned by either spouse before the marriage;

(2) acquired by either spouse in his or her own right:

(A) after the marriage; and

(B) before final separation of the parties; or

(3) acquired by their joint efforts.

Thus, all marital property, including property owned by either spouse prior to marriage, "goes into the marital pot for division[.]" *Hill v. Hill,* 863 N.E.2d 456, 460 (Ind.Ct.App.2007).

This "one-pot" theory insures that all assets are subject to the trial court's power to divide and award. While the trial court may ultimately determine that a particular asset should be awarded solely to one spouse, it must first include the asset in its consideration of the marital estate to be divided.

*Id.*

▰ Where, as here, there are assets that were acquired by both parties prior to marriage,

the trial court may achieve a just and reasonable property division by determining the appreciation over the course of the marriage of such assets and dividing the appreciation between the spouses, while setting over to the appropriate spouse the pre-marriage value of the assets at issue.

*Doyle v. Doyle,* 756 N.E.2d 576, 579 (Ind. Ct.App.2001).

*a. After-acquired property*

▰ Husband contends that the trial court improperly "include[d] in the marital pot a bank account with the value of $1,522.47," which Husband asserts was opened after the date of the filing of the petition for dissolution and funded with money earned subsequent to that date. Husband's Br. at 30. Generally, property acquired after the final separation is excluded from the marital estate. *Thompson,* 811 N.E.2d at 912.

In this case, the trial court admitted into evidence Husband's verified financial declaration. The financial declaration listed the parties' assets, including the value of the assets *"as of the date Petition for Dissolution of Marriage was filed."* (Wife's Ex. 23) (emphasis added). Husband listed a checking account with Fifth Third Bank ("Husband's 5/3 Checking Account") as an asset and listed the value at $1,522.47.

The evidence supports the trial court's inclusion of the Husband's 5/3 Checking Account in the marital estate. Thus, we find no abuse of discretion.

*b. Marital property*

▰ Husband asserts that "the trial court ran afoul of the requirement that 'all' marital property is to go into the one pot to be divided and awarded because it considered for purposes of dividing the pot only the appreciation or depreciation of those assets that 'accrued during the marriage.'" Husband's Br. at 16. We agree.

▰ In this case, the trial court did not adhere to the "one-pot" theory in dividing the marital estate. Rather, in looking exclusively at the assets' appreciation or depreciation [6] over the course of the mar-

---

**6.** We note that the trial court found that

"[a]ny changes in the value of [the parties'

riage, the trial court failed to consider and divide property "owned by either spouse before the marriage[.]" I.C. § 31–15–7–4(a).

In determining and dividing the value of the marital estate, the trial court should have looked at the DOF values, which included both the pre-marriage value and any appreciation, of the parties' assets, as follows:

| Description | DOF Value |
| --- | --- |
| Edward Jones Roth IRA | $ 21,211.05 |
| Edward Jones Trad'l IRA | $ 31,327.37 |
| American Funds IRA | $ 8,682.38 |
| Boehringer Ingelheim RSP | $ 18,053.00 |
| Boehringer Ingelheim RAP | 0 |
| Fidelity Stock | $ 36,893.02 |
| American Funds Pension | $ 3,675.95 |
| Husband's 5/3 Checking Account | $ 1,522.47 |
| Wife's 5/3 Savings Account | $ 2,617.58 |
| Wife's 5/3 Checking Account | $ 322.82 |
| Wife's KeyBank Account | $ 24,882.15 |
| 5/3 Joint Checking Account | $ 12,114.97 |
| 5/3 Joint Savings Account | $ 30,375.39 |
| Life Insurance Cash Value | $ 3,113.86 |
| Jet Ski | $ 2,530.00 |
| Tax Refund | $ 1,307.00 |
| Jeep (trade-in value—lien) | $ 736.67 [7] |
| Household Goods & Furnishings | $ 15,000.00 |
| Parking Lot | 0 |
| Husband's Coin Collection | 0 |
| Husband's Sport Memorabilia | 0 |
| Husband's Jewelry | 0 |
| Wife's Jewelry | 0 |
| *Total* | **$ 214,365.68** |

Here, the trial court determined that "the marital estate should be divided equally between the parties." (App. 15). In doing so, the trial court "reviewed the provisions of I.C. 31–15–7–5, regarding the division of property and [found] the determination of an equal division of the marital estate, is in accord with said statutory provisions, consideration and requirements...." *Id.* Accordingly, under an equal split, each party is entitled to approximately $107,182.84 of the marital estate.

Given that the parties came to the marriage with individually owned assets and both expressed a desire to maintain those assets, we, in the interests of judicial economy and pursuant to Indiana Appellate Rule 66, hereby reverse the trial court's order and remand with instructions to enter an order, distributing the parties' assets as follows:

investment accounts] during the parties' marriage is due solely to the volatility of the stock market rather than any individual skill or effort of either party." (App. 8). In dividing the marital assets, however, the trial court considered the depreciation of several accounts held in Wife's name. The trial court then assigned the depreciated amounts to Wife as if they were marital debts, to be offset by the parties' assets. This, in effect, increased Wife's share of the net marital estate. We find this to be erroneous where, as in this case, there is no finding that the assets were dissipated. *See Thompson,* 811 N.E.2d at 915 ("Dissipation of marital assets involves the frivolous and unjustified spending of marital assets.").

7. We note that Wife argued, and the trial court agreed, that the Jeep should have a negative value due to "applying the trade-in value of [the Pontiac]...." (Tr. 27). This argument, however, fails to recognize that the value of the Pontiac was applied toward the Jeep. The trial court has broad discretion in ascertaining the value of property. *See Sanjari v. Sanjari,* 755 N.E.2d 1186, 1191 (Ind.Ct. App.2001). The trial court, however, abuses its discretion where, as in this case, there is no evidence to support its valuation. *See Thompson,* 811 N.E.2d at 917.

| Description | Value | Husband | Wife |
|---|---|---|---|
| **Assets Acquired Prior to Marriage** | | | |
| Edward Jones Roth IRA | $ 21,211.05 | $ 21,211.05 | |
| Edward Jones Trad'l IRA | $ 31,327.37 | $ 31,327.37 | |
| American Funds IRA | $ 8,682.38 | $ 8,682.38 | |
| Fidelity Stock | $ 36,893.02 | | $ 36,893.02 |
| Wife's 5/3 Savings Account | $ 2,617.58 | | $ 2,617.58 |
| Wife's 5/3 Checking Account | $ 322.82 | | $ 322.82 |
| Wife's KeyBank Account | $ 24,882.15 | | $ 24,882.15 |
| Life Insurance Cash Value | $ 3,113.86 | | $ 3,113.86 |
| Jet Ski | $ 2,530.00 | $ 2,530.00 | |
| Husband's Coin Collection | 0 | 0 | |
| Sub-Totals | $131,580.23 | $ 63,750.80 | $ 67,829.43 |
| **Assets Acquired During Marriage[8]** | | | |
| Boehringer Ingelheim RSP | $ 18,053.00 | $ 18,053.00 | |
| Boehringer Ingelheim RAP | 0 | 0 | |
| American Funds Pension | $ 3,675.95 | | $ 3,675.95 |
| Husband's 5/3 Checking Account | $ 1,522.47 | $ 1,522.47 | |
| 5/3 Joint Checking Account | $ 12,114.97 | | $ 12,114.97 |
| 5/3 Joint Savings Account | $ 30,375.39 | $ 12,606.57 | $ 17,768.82 |
| Tax Refund | $ 1,307.00 | | $ 1,307.00 |
| Jeep | $ 736.67 | | $ 736.67 |
| Household Goods & Furnishings | $ 15,000.00 | $ 11,250.00 | $ 3,750.00 |
| Parking Lot | 0 | | 0 |
| Husband's Jewelry | 0 | 0 | |
| Wife's Jewelry | 0 | | 0 |
| Husband's Sport Memorabilia | 0 | 0 | |
| Sub-Totals | $ 82,785.45 | $ 44,902.24 | $ 37,883.21 |
| Totals | $214,365.68 | $107,182.84 | $107,182.84 |

Furthermore, the net proceeds from the sale of the Marital Residence shall be equally divided between Husband and Wife.[9]

2. *Valuation and Sale of the Marital Residence*

 Husband asserts that the trial court abused its discretion in valuing the Marital Residence and ordering that the Marital Residence be listed and sold at $330,000.00. Again, a trial court has broad discretion in ascertaining the value of property in a dissolution action. *Sanjari,* 755 N.E.2d at 1191. We will find no abuse of discretion if the trial court's decision is supported by sufficient evidence and reasonable inferences therefrom. *Id.* A trial court, however, "abuses its discretion when there is no evidence in the record supporting its decision to assign a particular value

8. We reiterate that all marital property goes into the marital pot for division, whether it was owned by one spouse before the marriage or purchased with funds that one spouse brought into the marriage. *See* I.C. § 31–15–7–4(a). Therefore, this category includes co-mingled assets, such as monies from Husband's individual savings and checking accounts.

9. In finding that the trial court improperly excluded property from the marital estate, we need not address Husband's "alternative basis" for relief. Husband's Br. at 24.

to a marital asset." *Thompson,* 811 N.E.2d at 917.

Here, the trial court admitted into evidence Husband's exhibit showing that Husband and Wife purchased the Marital Residence for $277,017.00 in September of 2005. Wife testified that based on up-grades and improvements, she believed the Marital Residence to be worth $330,000.00 as of the date of the filing of the petition for dissolution. The trial court admitted into evidence an exhibit reflecting that the Marital Residence was insured for up to $363,000.00. Husband opined that the Marital Residence was worth $229,000.00.

The trial court valued the Marital Residence at $330,000.00, which was within the range of values supportable by the evidence. The trial court then ordered that the Marital Residence be sold and the proceeds divided between Husband and Wife "in such amounts necessary to achieve an equal division of the marital estate between the parties." (App. 16).

Husband, however, contends that it is impossible to comply with the trial court's order because the realtor refuses to list and market the Marital Residence at $330,000.00. We disagree.

As to the sale of the Marital Residence, the trial court found, in pertinent part, as follows:

> The marital residence shall be immediately listed for sale with Keith Albrecht, a real estate broker previously agreed upon by the parties. The Court finds that the fair market value of the marital residence is *approximately [$330,-000.00].* The parties will not reject any bona fide offer to purchase the marital residence for a sale price of $330,000.00

or more unless the parties mutually agree, in writing, to make such rejection or to counter said offer at a higher price, or better terms. If either party is unwilling to negotiate further, then such bona fide offer shall be accepted and the residence shall be sold.

(App. 12) (emphasis added).

The trial court then ordered that

> [t]he [Marital Residence] *shall be immediately listed and sold for fair market value in accordance with the provision set out in the Court's Findings above,* and that upon closing, all expenses of sale are to be paid and any net equity remaining shall be divided in such amounts necessary to achieve an equal division of the marital estate between the parties.

(App. 16) (emphasis).

The trial court did not order that the Marital Residence be listed and sold for $330,000.00. Rather, it found that the Marital Residence's fair market value was *approximately* $330,000.00, "*as of the date of separation.*" (App. 11) (emphasis added). The trial court then ordered that the Marital Residence be "listed and sold for fair market value . . . ." (App. 16).

We disagree with Husband's overly literal reading of the trial court's order that the Marital Residence must be listed and sold for $330,000.00. Rather, we find that the trial court properly ordered that the Marital Residence be listed and sold for the *current* fair market value [10] with the caveat that no offer at or above $330,000.00 would be rejected unless certain conditions applied.

---

10. "Fair market value is the price at which property would change hands between a willing buyer and seller, neither being under any compulsion to consummate the sale." *City of Carmel v. Leeper Elec. Services, Inc.,* 805 N.E.2d 389, 395 (Ind.Ct.App.2004).

Affirmed in part, reversed in part, and remanded with instructions.

NAJAM, J., and BROWN, J., concur.