## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 14 2017, 10:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Aaron Westlake
Bradley Kim Thomas, II
Thomas Law Firm
Auburn, Indiana

ATTORNEY FOR APPELLEE

Cory R. Swagger
Auburn, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cassie L. Carnahan, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Jason M. Carnahan, <br> *Appellee-Respondent.* | February 14, 2017 <br><br> Court of Appeals Case No. 17A03-1606-DR-1537 <br><br> Appeal from the DeKalb Superior Court <br><br> The Honorable Monte L. Brown, Judge <br><br> Trial Court Cause No. 17D02-1510-DR-187] |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Cassie L. Carnahan (Wife), appeals the trial court's division of marital property following the dissolution of her marriage to Appellee-Respondent, Jason M. Carnahan (Husband).

We affirm in part, reverse in part, and remand.

# ISSUES

Wife raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion by awarding the entirety of certain disputed marital property to Husband; and

(2) Whether the trial court abused its discretion in its valuation of certain marital property.

# FACTS AND PROCEDURAL HISTORY

Husband and Wife were married on July 29, 2006. Their marriage produced two children: a daughter, born July 10, 2007; and a son, born December 15, 2011. Husband is employed by KD Carnahan Farms Incorporated (Carnahan Farms), which is his family's business. Wife is a paralegal.

During their marriage, Husband and Wife lived rent-free in a house that is owned by Carnahan Farms. However, prior to the marriage, in May of 2003, Husband purchased a seventy-eight-acre tract of farmland in Butler, Dekalb County, Indiana (the Property), for $139,500. Although the parties planned to eventually build a home on the Property, they never did so. Rather, Husband

leased the Property's acreage to Carnahan Farms for farming purposes. In lieu of a fixed amount of rent, Carnahan Farms, paid just enough to cover the Property's mortgage, property taxes, and insurance.

[6] On October 5, 2015, Wife filed a petition to dissolve the parties' nine-year marriage. On February 11, 2016, the parties filed a Partial Mediated Settlement Agreement with the trial court. Pursuant to the Partial Mediated Settlement Agreement, Husband and Wife resolved all issues relating to certain marital assets and debts (*i.e.*, retirement accounts, vehicles, other personal property, credit card debt, and student loan obligations). The Partial Mediated Settlement Agreement also provided for the custody and support of the parties' minor children. In particular, Husband and Wife agreed to share joint legal custody of the children, with Wife having primary physical custody. The parties agreed that Husband would exercise reasonable parenting time and that he would pay $110.00 per week in child support. The parties were unable to reach a mutual agreement regarding the Property in their Partial Mediated Settlement Agreement.

[7] On March 23, 2016, the trial court conducted a final hearing. The only matters to be determined by the court were the valuation and division of the Property. On May 31, 2016, the trial court issued a Decree of Dissolution of Marriage. In its Decree, the trial court adopted the agreements reached by the parties in their Partial Mediated Settlement Agreement. As to the Property, the trial court

valued the Property at $254,000 based on an appraisal completed in February of 2013[1] and awarded the Property entirely to Husband.

[8] Wife now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[9] Wife claims that the trial court abused its discretion in valuing and dividing the Property. The trial court issued specific findings of fact and conclusions thereon in support of its Decree of Dissolution. It does not appear in the record that either party requested such findings; as such, *sua sponte* findings "control only the issues they cover, and a general judgment will control as to the issues upon which there are no findings." *Estudillo v. Estudillo*, 956 N.E.2d 1084, 1089-90 (Ind. Ct. App. 2011). As to the issues upon which the trial court made specific findings, we apply a two-tiered standard of review: first, we consider whether the evidence supports the findings of fact; second, we determine whether the findings of fact support the conclusions thereon. *Id.* at 1090. We will uphold the trial court's findings of fact and conclusions thereon unless they are clearly erroneous. Ind. Trial Rule 52(A). Clear error is "that which leaves us with a definite and firm conviction that a mistake has been made." *Masters v. Masters*, 43 N.E.3d 570, 575 (Ind. 2015).

---

[1] The trial court also found that, as of the date the petition for dissolution was filed, the balance of the mortgage on the Property was $122,140.44.

## I. *Division of the Property*

We first address Wife's claim that the trial court improperly awarded the Property solely to Husband. A trial court has broad discretion in dividing the marital estate, and we will reverse a trial court's decision only for an abuse of discretion. *O'Connell v. O'Connell*, 889 N.E.2d 1, 10 (Ind. Ct. App. 2008). The "party challenging the trial court's division of marital property must overcome a strong presumption that the trial court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal." *Id.* (internal quotation marks omitted). On review, we will neither reweigh evidence nor assess the credibility of witnesses, and "we will consider only the evidence most favorable to the trial court's disposition of the marital property." *Id.*

In dissolution proceedings, the trial court is required to divide the property of the parties "in a just and reasonable manner." Ind. Code § 31-15-7-4(b). This includes property that is

> (1) owned by either spouse before the marriage;

> (2) acquired by either spouse in his or her own right:

>> (A) after the marriage; and

>> (B) before final separation of the parties; or

> (3) acquired by their joint efforts.

I.C. § 31-15-7-4(a). Thus, in Indiana, the division of marital property is a two-step process. *O'Connell*, 889 N.E.2d at 10. First, the trial court must ascertain what property is to be included in the marital estate; second, the trial court must fashion a just and reasonable division of the marital estate. *Id.* The "one-pot" theory—*i.e.*, that *all* property acquired before or during the marriage is to be included in the marital estate—ensures "that all assets are subject to the trial court's power to divide and award. While the trial court may ultimately determine that a particular asset should be awarded solely to one spouse, it must first include the asset in its consideration of the marital estate to be divided." *Id.* at 11 (quoting *Hill v. Hill*, 863 N.E.2d 456, 460 (Ind. Ct. App. 2007)).

[12] In determining how to divide a marital estate, the trial court "shall presume that an *equal* division of the marital property between the parties is just and reasonable." I.C. § 31-15-7-5 (emphasis added). However, this is a rebuttable presumption, and a party may present relevant evidence to establish that an equal division would not be just and reasonable. I.C. § 31-15-7-5. The trial court may consider evidence of the following factors in determining whether it would be appropriate to deviate from the presumption of an equal division:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

> (2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

I.C. § 31-15-7-5. Where, as here, "the parties divide[d] between themselves a part of the marital estate and [left] the division of the balance to the discretion of the trial court, the trial court should assume that the property that the parties have already divided was divided justly and reasonably and shall divide the remainder of the assets and liabilities of the parties as if they were the entirety of the marital estate." *Nornes v. Nornes*, 884 N.E.2d 886, 889 (Ind. Ct. App. 2008).

[13] In the present case, there is no dispute that the Property is marital property subject to the presumption of an equal division. However, the trial court found that Husband rebutted the presumption and awarded the Property to him in its

entirety. In support of its decision to deviate from the presumption of an equal division, the trial court made the following findings:

(a) That [Husband] purchased the [Property] in his name alone approximately [three] years prior to the parties' marriage and was never transferred into their joint names;

(b) That all payments on the mortgage, taxes, and insurance associated with the subject real estate were paid entirely from the proceeds of the tenant that leased said [Property] from the date it was purchased through the date that the Petition for Dissolution of Marriage was filed;

(c) That the [c]ourt is unable to make an informed determination regarding the economic circumstances of each spouse at the time the disposition of the [P]roperty is to become effective for the reason that the provisions of the [m]arital [s]ettlement [a]greement were mediated and not specifically stated in the [Partial Mediated Settlement Agreement];

(d) That no evidence was presented to the [c]ourt that either party was responsible for the dissipation of property during the parties' marriage; and

(e) That the only evidence submitted to the [c]ourt regarding [Husband's] income is the Child Support Obligation Worksheet attached to the [Partial Mediated Settlement Agreement] reflecting a weekly gross income for [Husband] in the amount of $680.00 and a weekly gross income for [Wife] in the amount of $1,078.00 reflecting that [Wife] earns approximately 61% of the marital income and [Husband] earns approximately 39% of the marital income, [Wife] having a significantly greater income earning ability.

(Appellant's App. pp. 17-18). Thus, the trial court heavily relied on the fact that Husband purchased the Property prior to the marriage; the proceeds from leasing the Property covered all of the expenses associated therewith; and Wife's earning ability exceeds that of Husband.

[14] Wife concedes that "[i]t is possible that there was sufficient evidence presented to allow the trial court to find that the presumption of an equal distribution was rebutted." (Appellant's Br. p. 12). Nevertheless, without specifically challenging any of the trial court's findings, she insists that

> [a]lthough some of the factors weighed in favor of Husband, including Husband's premarital acquisition of the . . . Property and Wife's somewhat greater income, the factors did not weigh so much in Husband's favor so as to justify a [100%] to [0%] split in favor of Husband. Much of the equity in the . . . Property accrued during the marriage while Husband was actively employed by the tenant of the . . . Property [(*i.e.*, Carnahan Farms)].[2] Although Wife's income was higher than Husband's at the time of the final hearing, the trial court should have also considered the economic situation of the parties. Notably, Wife was leaving the marriage as the primary custodian of two minor children without a residence she could depend on. There was also no evidence that Wife was leaving the marriage with substantial assets that would put her in a favorable economic situation. On the other hand, the evidence suggests that Husband was going to be able to continue to rely on rent free

---

[2] Based on the trial court's valuation of the Property at $254,000 and the outstanding mortgage balance of $122,140.44, Wife asserts that, at the time the parties separated, there was "no less than $131,859.56 in equity" in the Property. (Appellant's Br. p. 13). Furthermore, the value of the Property increased from $185,000 at the time of purchase to $254,000 at the time of the dissolution.

living in the marital residence that was provided by [Carnahan Farms].

(Appellant's Br. pp. 17-18). In turn, Husband argues that it was well within the discretion of the trial court to award nothing to Wife.

[15] It is clear that the trial court considered the factors set forth in Indiana Code section 31-15-7-5 for deviating from the presumption of an equal division, and we agree that there is evidence to warrant a deviation from an equal split. In particular, Husband brought the Property into the marriage, and, thereafter, the Property neither directly benefitted the marital estate by producing extra income, nor diverted marital assets away from the family's use as it was sustained by the rent paid thereon. Nevertheless, during the course of the marriage, the Property significantly increased in value. In fact, between 2003 and 2013, the Property appreciated from a value of $185,000 to $254,000, during which time the mortgage steadily decreased.

[16] Furthermore, notwithstanding the trial court's finding that there is little evidence of the parties' economic circumstances, it is clear from the Partial Mediation Settlement Agreement and the final hearing that the Property is the only marital asset of any substantial value. The parties were married for more than nine years, during which both parties contributed financially. Although the trial court found as a reason for deviating from an equal division that Wife earned 61% of the income and has a greater income earning ability than Husband, the evidence also indicates that the parties lived rent-free throughout their marriage as a benefit of Husband's employment. Wife was still living in

the house owned by Carnahan Farms at the time of the final hearing while Husband was temporarily housesitting for a neighbor, but Wife has pointed out that she and the children will have to find new living arrangements because the marital home belongs to Husband's family/Carnahan Farms. Thus, she argues that Husband will be able to continue to reside in the marital home rent-free (in addition to owning the Property, which is effectively mortgage-free). The trial court has, essentially, awarded the entirety of the estate to Husband. *See Nornes*, 884 N.E.2d at 889. While a deviation from the presumption of an equal division may be justified, we cannot agree that it was just and reasonable to completely exclude Wife from any share of the marital pot. Accordingly, we remand with instructions for the trial court to re-divide the Property between the parties in a just and reasonable manner.

## II. *Valuation of the Property*

[17] Wife next challenges the trial court's valuation of the Property. As with the division of marital property, we likewise review a trial court's decision in ascertaining the value of certain marital assets for an abuse of discretion. *Balicki v. Balicki*, 837 N.E.2d 532, 536 (Ind. Ct. App. 2005), *trans. denied*. "If the trial court's chosen valuation is within the range of values supported by the evidence, the court does not abuse its discretion." *Id.* On the other hand, "[a] trial court abuses its discretion when there is no evidence in the record supporting its decision to assign a particular value to a marital asset." *Thompson v. Thompson*, 811 N.E.2d 888, 917 (Ind. Ct. App. 2004), *trans. denied*.

[18]     During the final hearing, three appraisals of the Property's value were admitted into evidence. The first, Exhibit 1, was completed in January of 2003—shortly before Husband purchased the Property—and estimated the value of the Property at $185,000. Exhibit 2 contains an appraisal that was completed in February of 2013, which estimates the Property's value at $254,000. Finally, the third appraisal, Exhibit 3, was completed in February of 2016 and values the Property at $337,500. All three exhibits were submitted by Wife, and the two appraisals currently at issue—the February 2013 appraisal and the February 2016 appraisal—were completed by the same appraiser. In the Decree of Dissolution, the trial court stated that it

> disregarded the [February 2016] appraisal . . . for several reasons, including the fact that [the Property] was valued as of a date nearly [four] months after the date of final separation and for the reason that the cover letter to the report states that the report is based on a physical analysis of the property "having no improvements[."] However, the report itself states that included in the appraisal is a bank barn and an attached flat barn with the pole barn (flat barn) included in the appraised value in the amount of $7,500.00, but does not reference the bank barn or its value.

(Appellant's App. p. 16). Thus, the trial court concluded

> [t]hat the only meaningful evidence concerning the value of said [Property] is [Wife's] Exhibit 2, which values the real estate of February 1, 2013, in the amount of $254,000.00. Said appraisal, both in the report and on the addendum attached thereto, shows that no improvements are included in the valuation of said [Property] pursuant to the request of [Wife].

(Appellant's App. p. 16).

[19] Wife now contends that the trial court abused its discretion by relying on the February 2013 appraisal because it establishes the value of the Property more than two-and-a-half years prior to the parties' separation date. It is well established that a trial court has authority to "set any date between the date of filing the dissolution petition and the date of the final hearing as the date for marital property valuation." *Leonard v. Leonard*, 877 N.E.2d 896, 900 (Ind. Ct. App. 2007). Because the February 2016 appraisal was conducted within the appropriate timeframe, Wife asserts that the trial court should have valued the Property at $337,500. Husband, however, asserts that the trial court properly disregarded the February 2016 appraisal because it contained "too many inconsistencies." (Appellee's Br. p. 10).

[20] Our court has previously found an abuse of discretion where the trial court valued property based on a date that preceded the date of final separation (that is, the date the petition for dissolution was filed). *See Trackwell v. Trackwell*, 740 N.E.2d 582, 585 (Ind. Ct. App. 2000), *trans. dismissed*. However, in *Thompson*, 811 N.E.2d at 898, 919, the trial court valued the marital residence at $387,000 in accordance with the wife's appraisal, which was procured approximately a year-and-a-half before the petition for dissolution was filed. In so doing, the trial court rejected the husband's proffered appraisal, which was completed after the date of final separation. *Id.* at 919. In affirming the trial court's valuation of the marital residence, we stated that its "decision to value the . . . marital residence at $387,000 was not necessarily an indication that it chose a date prior

to final separation to value the residence." *Id.* Rather, we noted that the husband's proffered valuation "was heavily contested at trial, and inferences from the evidence adduced at trial support[ed] the trial court's chosen valuation." *Id.* at 919-20.

[21] In the present case, the trial court found discrepancies in the February 2016 appraisal regarding whether certain improvements on the Property were included in the valuation. It appears that while the appraiser noted in its cover letter that there were no improvements on the Property, it included the value of two barns in its final estimate (but only identified the specific contributing value of one of those barns). On the other hand, it appears that the February 2013 appraisal, per Wife's request, was based on the value of the land without consideration of the improvements thereon. Wife now contends that, in addition to the fact that the February 2016 appraisal is the appropriate evidence of valuation based on its date of completion, any improvements on the Property are part of the marital pot and should properly be included in the valuation.

[22] We reiterate that the weight and credibility of evidence are matters reserved to the discretion of the trial court, and, here, Wife submitted evidence with inconsistencies that led the trial court to doubt its reliability. Furthermore, we find that there is evidence from the February 2016 appraisal to support the trial court's valuation of $254,000. In its report, the appraiser noted that "[a]lthough a single value conclusion [of $337,500] is provided within this report, the value of the [Property] could easily vary within the range indicated by the comparable sales." (Appellant's Exh. 3). The comparable sales provide a range of values

from $175,000 to $322,800. Thus, the trial court's valuation of $254,000 based on the February 2013 appraisal also falls within the range of evidence supported by the February 2016 appraisal. As in *Thompson*, notwithstanding any reliance on an outdated appraisal, we affirm the trial court because there is other evidence to support such a valuation within the proper timeframe. *See Thompson*, 811 N.E.2d at 919-20.

# CONCLUSION

Based on the foregoing, we conclude that the trial court abused its discretion by awarding the entirety of the disputed marital estate (*i.e.*, the Property) to Husband, and we remand for the trial court to effectuate a division that is just and reasonable. We further conclude that the trial court did not abuse its discretion in its valuation of the Property.

Affirmed in part, reversed in part, and remanded.

Crone, J. and Altice, J. concur