## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 25 2019, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen A. Wyle
Bloomington, Indiana

ATTORNEY FOR APPELLEE

Dana Robert Kerr
Kerr Law, P.C.
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Samuel Otto Dean,

*Appellant-Petitioner,*

v.

Denise Darlene Dean,

*Appellee-Respondent,*

October 25, 2019

Court of Appeals Case No.
19A-DC-985

Appeal from the Owen Circuit Court

The Honorable Kelsey Hanlon, Judge

Trial Court Cause No.
60C02-1710-DC-122

**Robb, Judge.**

# Case Summary and Issues

[1] Following the entry of a decree of dissolution between Samuel Dean ("Husband") and Denise Dean ("Wife"), in which the trial court ordered an unequal division of the marital estate, Husband appeals and raises two issues for our review which we restate as: (1) whether the trial court abused its discretion in its treatment of $122,736 in equity in the marital residence; and (2) whether the trial court abused its discretion in dividing the marital estate unequally, with Wife receiving 65% and Husband 35%. Concluding the trial court did not abuse its discretion in either respect, we affirm.

# Facts and Procedural History

[2] Following years of cohabitation, the parties were married on March 23, 2007, and share two children, N.D., born December 8, 2003, and C.D., born April 2, 2007 (the "Children"). The parties separated in 2016 and their marriage was dissolved on April 2, 2019. The crux of the dispute between the parties in this case is the division of the marital estate following the dissolution.[1] The facts pertinent to the resolution of this dispute are as follows.

[3] Wife's mother, Rita Henderson, owned a house located at 1274 Burke Shiloh Road in Spencer, Indiana, property that had been in Rita's family "[a] long

---

[1] Although this dissolution of marriage action involves children, the issues on appeal pertain only to the division of property. Accordingly, we have limited our recitation of the facts and procedural history to those pertaining only to the property.

time." Transcript of Evidence, Volume II at 137. Following the death of her husband in 2001 or 2002, Rita sold the property to her son, Wade Henderson, for the amount owed on the property. The property was worth more than the amount owed, and Wade considered the excess value a gift. In 2003, Husband and Wife purchased a home located at 1282 Burke Shiloh Road, immediately adjacent to the 1274 Burke Shiloh Road property.

[4] Rita eventually moved back into the home where she resided with Wade until 2011, when Wade moved out. Rita continued to live in the home and Wade agreed to sell the property back to Rita for the amount owed on the property, approximately $61,000. However, due to Rita's limited income, she was unable to refinance the property solely in her name. Wife and Rita initially planned to add Wife to the deed; however, Husband's debt to credit ratio was better than Wife's. Therefore, Husband co-signed the loan and was added to the deed on December 30, 2011. At this time, the appraised value of the property was $155,000. Thirty days later, Rita and Husband signed a quitclaim deed adding Wife to the property. Rita lived in the house, during which time she paid the mortgage, taxes, insurance, and utilities for the property.

[5] In 2014, Husband and Wife decided to invest in the property by remodeling it. The plans included building a portion of the home exclusively for Rita, giving her a bedroom, bathroom, and separate access to the kitchen and dining areas. Husband and Wife intended to live in the remodeled home until the Children were grown and then sell it. To pay for the renovations, Husband and Wife took out a home equity line of credit in their names, as well as Rita's. Before

any improvements were made, the property was appraised for a value of $192,000.

[6] Husband created the design and plan for the renovations and performed a substantial amount of the remodeling, with the assistance of Wife and the Children. Contractors completed the rest of the remodeling. In May 2016, the parties moved into the renovated property and later that summer, sold their 1282 Burke Shiloh Road property. The proceeds of the sale were applied to the debt incurred to remodel the 1274 Burke Shiloh Road property. Ultimately, the parties separated on November 7, 2016. Husband left the marital residence and Wife and the Children remained in the home.[2] The same day, Husband and Rita transferred title of the marital residence to Wife via quitclaim deed. As the sole title holder, Wife then refinanced the property.

[7] On October 16, 2017, Husband filed his Verified Petition for Dissolution of Marriage, and the trial court held a final hearing on February 7, 2019. Following the hearing, the trial court issued its Decree of Dissolution and, with respect to division of property, found in pertinent part:

> 9.      Husband and Wife each have retirement accounts. Wife had over $58,000.00 in retirement savings prior to the marriage. Wife additionally had an American Funds account prior to the marriage in the amount of $27,510.00. Over $85,000.00 worth of Wife's retirement savings were accumulated prior to the marriage

---

[2] At some point, Rita began living in the home as well.

and through her sole efforts. Husband has a 401(k) valued at approximately $78,431.00.

10.    Husband is approximately ten (10) years younger than Wife.

11.    Wife earns $991.00 per week and Husband earns $1,903.00 per week.

12.    Husband has significantly more time and earnings to prepare for retirement than Wife.

13.    The largest marital debt aside from mortgage debts is Husband's student loan debt. [Husband] received his degree approximately ten (10) months prior to filing for divorce – in August of 2016 – and it is just and reasonable for [Husband] to be solely responsible for the debt.

14.    The Parties came to own the marital residence at 1274 Burke Shiloh Road in Spencer, through a somewhat convoluted set of transactions with Wife's Brother[,] Wade Henderson[,] and Wife's Mother, Rita Henderson. . . .

* * *

18.    [Eventually, Wade] sold the property back to [Rita] for $85,000.00 less than the property's appraised value and while the same may not have been an explicit gift, it was not an arm's length transaction. . . .

* * *

21. The Parties completely remodeled the marital residence. Husband served as the project's general contractor and did numerous projects himself. Some portion of the equity in the home is attributable to the costs saved/value-added by Husband's personal participation in the construction project.

22. The home's stipulated valued is $325,000.00 and the stipulated mortgage balance is $156,470.00. The equity in the home is $168,530.00. Of this equity, at least $85,000.00 and possibly as much as $122,736.00 is directly attributable to the contributions by Wife's family.

* * *

24. On November 6, 2016, Husband executed a quitclaim deed as to the marital home and Wife became the sole deeded owner and refinanced the mortgage with the same being in her name only.

25. Husband withdrew $16,365.00 from the parties' joint accounts in anticipation of filing for dissolution of marriage and stated that the remaining funds in the joint accounts were Wife's and this was "the only and final division of money from accounts." Husband then used some portion of those monies for the down payment of his current residence[.] The equity in [his] home is included in [the] marital estate which adequately captures the sums removed from the accounts prior to the dissolution for purposes of final division.

Appealed Order at 2, 4. Based on these findings, the trial court concluded:

26. The Court has considered all of the factors of Indiana Code 31-15-7-5. Wife has rebutted the presumption in favor of equal division of the marital estate.

27. The Court determines that a division of 35% to Husband and 65% to Wife is fair and equitable. The Court finds [the] distribution set forth in *Attachment I* and ordered below constitutes a just and reasonable division of marital assets and liabilities in accordance to Indiana Code 31-15-7-4 and -5.

\* \* \*

L. Husband shall be solely responsible for any and all debts in his sole name, including his student loans.

\* \* \*

N. To effectuate the 35% to Husband and 65% to Wife marital estate division, Wife shall pay the sum of $34,697.00 to [H]usband[.]

*Id*. at 4-5, 7. In *Attachment I* to the order, the trial court included $122,736 of equity in the marital home as a gift to Wife, reducing the home's net equity to $45,794 to be included in the marital pot.[3] $85,000 of Wife's retirement and securities were included in the marital pot, all of which "were accumulated prior to the marriage and through her sole efforts[,]" and then assigned to Wife. *Id*. at 2, ¶ 9. Husband's $22,723 in student loan debt was included and

---

[3] This was calculated as follows: $325,000 value in the residence minus the $156,470 mortgage equals $168,530 of total equity in the home. The trial court then subtracted the $122,736 of equity (gifted from Wife's family) from the total equity of $168,530, leaving $45,794 in net equity to be included in the marital pot.

subsequently assigned to him.[4]  Based on the trial court's division, Wife owed

Husband $34,697.  Husband now appeals.

# Discussion and Decision

## I.  Standard of Review

Where, as here, the trial court enters findings of fact and conclusions sua

sponte, the specific findings control only with respect to the issues they cover,

and we apply a general judgment standard to all issues on which there are no

findings.  *Bock v. Bock*, 116 N.E.3d 1124, 1126 (Ind. Ct. App. 2018).  The

findings or judgment will be set aside only if they are clearly erroneous,

meaning that there are no facts or inferences drawn therefrom to support them.

*Id*. at 1127.

## II.  Division of Property

We apply a strict standard of review to a court's distribution of property upon

dissolution.  *Id*.  A trial court has broad discretion in ascertaining the value of

property in a dissolution action *and* in dividing the marital estate, and we will

reverse a trial court's valuation or division only for an abuse of that discretion.

*Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996); *Goodman v. Goodman*, 94

N.E.3d 733, 742 (Ind. Ct. App. 2018), *trans. denied*.  "The party challenging the

---

[4] Although Wife's retirement was designated to her and Husband's student loan debt was designated to him, the retirement and debt remained in the marital pot, unlike the real estate gift equity.

trial court's division of marital property must overcome a strong presumption that the trial court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal." *Goodman*, 94 N.E.3d at 742. On review, we do not reweigh the evidence or assess the credibility of the witnesses. *Id*. Instead, we consider only the evidence most favorable to the trial court's disposition of the marital property. *Id*.

[10] The trial court must divide marital property in a "just and reasonable manner" in dissolution proceedings. Ind. Code § 31-15-7-4(b). The division of marital property is a two-step process. *O'Connell v. O'Connell*, 889 N.E.2d 1, 10 (Ind. Ct. App. 2008). The trial court first ascertains what property must be included in the marital estate and then divides the estate in a just and reasonable manner. *Id*. at 10-11. Indiana employs a "one-pot" theory in which all property acquired before or during the marriage is included in the marital estate. *Goodman*, 94 N.E.3d at 742. This theory ensures that all marital assets are subject to the trial court's power to divide and award. *In re Marriage of Marek*, 47 N.E.3d 1283, 1288 (Ind. Ct. App. 2016), *trans. denied*. "While the trial court may ultimately determine that a particular asset should be awarded solely to one spouse, it must first include the asset in its consideration of the marital estate to be divided." *Goodman*, 94 N.E.3d at 742. With respect to the first step:

    (a) [T]he court shall divide the property of the parties, whether:

        (1) owned by either spouse before the marriage;

(2) acquired by either spouse in his or her own right:

(A) after the marriage; and

(B) before final separation of the parties; or

(3) acquired by their joint efforts.

Ind. Code § 31-15-7-4. Marital property includes assets *and* liabilities. *Capehart v. Capehart*, 705 N.E.2d 533, 536 (Ind. Ct. App. 1999), *trans. denied*.

## A. Equity in Marital Residence

Husband asserts that the trial court erred in its treatment of $122,736 of equity in the marital residence. He argues there is no evidence in the record to support the trial court's valuation of the equity *or* the trial court's determination that the equity was intended as a gift solely for Wife, contrary to its findings. Husband also maintains that the trial court erred in excluding the equity from the marital estate and, as a result, improperly reduced his share of the marital estate. He claims that had the trial court not set aside the equity, his share of the marital estate would have included an additional $42,957.60. We conclude the trial court did not err.

First, there is evidence in the record to support the trial court's valuation of the equity. "A valuation submitted by one of the parties is competent evidence of the value of property in a dissolution action and may alone support the trial

court's determination in that regard." *Houchens v. Boschert*, 758 N.E.2d 585, 590 (Ind. Ct. App. 2001) (internal quotation omitted), *trans. denied*.

[13]   Here, Wife proposed the following equity valuation to the trial court:

|  |  |
|---|---|
| Appraisal of 05/23/14, time of gift: | $192,000 |
| Less mortgage approximation: | -$61,000 |
| Gift to [Wife] from [Rita]: | $131,000 |

Respondent's Exhibit B, Exhibit Index, Volume II at 33. The trial court found that Wade paid $8,264.04 on the mortgage and that amount should be "excluded from any equity attribution to a gift from Wife's Mother/Family." Appealed Order at 3, ¶ 19. Therefore, the net equity ($131,000) less Wade's payments ($8,264.04) equals $122,735.96, rounded up to $122,736 – the net equity the trial court found had been gifted solely to Wife from her family. Although Husband may disagree with the valuation, there is evidence in the record to support the trial court's valuation of the net equity.

[14]   Second, contrary to Husband's assertions, there is also evidence to support the trial court's finding that the equity was a gift intended solely for Wife. The record reveals that Rita owned the residence and, following her husband's death, sold the residence to Wade for the amount owed on the property. At the time of the transfer, Wade was aware the value of the property was worth more than the mortgage and the two did not discuss whether Wade needed to compensate Rita for the excess value. When asked whether he considered the

equity a gift from his mother, Wade testified, "Yeah basically yeah, I took over the house and bought it from her so she could get out from underneath it." Tr., Vol. II at 139. Eventually, Rita moved back in with Wade until the two decided to transfer the residence back to Rita and Wade moved out. However, Rita's limited income prevented her from refinancing the mortgage in her name alone. Wife initially agreed to co-sign for Rita, but Husband co-signed instead as his credit was better than Wife's. In 2011, Rita and Husband purchased the property from Wade for the amount owed and Wife was subsequently added to the deed. Rita continued to live in the home and while she lived in the residence, she was responsible for the mortgage, taxes, insurance, and utilities. At some point, the parties decided to invest in the property by renovating it. In 2014, Rita moved out of the residence so Husband and Wife could begin the renovations. At the time, the appraised value of the residence was $192,000 with a $61,000 mortgage. When asked whether Husband and Wife were to compensate her for the difference, Rita stated, "No, I mean it wasn't supposed to be . . . I was supposed to have my own room [in the residence] until I die I guess and you know but it didn't work out very well." *Id*. at 199. Rita further testified she "didn't know that [Husband and Wife] were gonna sell the house or anything, it was supposed to be kept in the family." *Id*. at 200. Specifically, she stated that she "wanted [the property] to go to [Wife]." *Id*. At the fact-finding hearing, Wife testified that her mother's "intention was that we would always live there, I mean her thing was that, it was a place for me and the [Children] to live and stay." *Id*. at 149. She also stated that Rita did not want her to pay back the equity.

[15]   The evidence supports the trial court's finding that the equity was intended solely for Wife. Rita intended to live in the residence until her death and clearly wanted the residence to remain in the family and specifically, with Wife. The trial court heard the testimony of the witnesses, assessed their credibility, and ultimately found that Rita intended the equity to be a gift solely to Wife. We will not reweigh the evidence or judge the credibility of the witnesses. *Goodman*, 94 N.E.3d at 742. There is evidence to support the trial court's finding.

[16]   Finally, Husband argues the trial court erroneously excluded the equity in dividing the marital estate. There is no question that the equity constitutes a marital asset to be considered in the marital estate. However, because the trial court found that the equity was a gift intended solely for Wife, the trial court was within its discretion to exclude the amount from division and set it aside solely for Wife. *See* Ind. Code. § 31-15-7-5(2)(B) (a gift to one spouse is one factor the trial court may consider in deviating from the presumption of an equal division of the marital estate).

[17]   Based on our review of the record, there is evidence to support the trial court's findings – that the $122,736 of equity was a gift from Wife's family intended solely for Wife and the trial court exercised its discretion in excluding it from the property division. Having concluded the trial court did not err in its treatment of the equity, we now evaluate the propriety of the trial court's unequal division of the marital estate.

# B. Unequal Distribution of Marital Estate

[18] Husband argues the trial court abused its discretion in dividing the marital estate unequally. Specifically, he takes issue with the trial court's alleged failure to attribute *more* weight to the "sweat equity" he put into the marital residence in dividing the marital estate. Brief of Appellant at 24. Husband further argues that the trial court erred in relying on his student loan debt to support unequal division of the marital estate. We conclude the trial court did not err.

[19] In determining how to divide the marital estate, the trial court begins with the presumption that an equal division is just and reasonable. Ind. Code § 31-15-7-5. However, this presumption may be rebutted by a party who presents evidence that an equal division would not be just and reasonable. *Id*. As this court has explained,

> [t]he term 'just' invokes a concept of fairness and of not doing wrong to either party; however, 'just and reasonable' does not necessarily mean equal or relatively equal. Because a substantial contribution by one spouse under one subparagraph may be offset by the contribution by the other spouse under another subparagraph, the trial court must look to the total circumstances when determining what is just and reasonable and have a rational basis for its action to avoid error.

*Swinney v. Swinney*, 419 N.E.2d 996, 998 (Ind. Ct. App. 1981) (internal citations omitted), *trans. denied*. A trial court may consider the following factors in determining whether to deviate from the presumption:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

> (A) before the marriage; or

> (B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective . . . .

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

> (A) a final division of property; and

> (B) a final determination of the property rights of the parties.

Ind. Code § 31-15-7-5.

[20]     Here, the trial court considered these factors and found: (1) Wife accumulated over $85,000 in retirement and securities before the marriage through her sole efforts; (2) Husband is ten years younger than Wife; (3) Husband's income is nearly twice as much as Wife's; (4) Husband has more time and earnings to prepare for retirement than Wife; (5) Husband received his degree ten months

before filing for divorce; and (6) $85,000 to $122,736 of equity in the marital residence was directly attributable to Wife's family and a gift intended solely for Wife. The trial court properly considered the parties' incomes, age, and property acquired prior to and during the marriage, and ultimately concluded that Wife rebutted the presumption in favor of equal division of the marital estate.

[21] Husband challenges the trial court's limited findings pertaining to his "sweat equity" in the marital residence, namely that his designs, labor, and extensive work significantly increased the value of the property. Accordingly, the trial court found that Husband "served as the project's general contractor and did numerous projects himself. [Therefore, s]ome portion of the equity in the home is attributable to the costs saved/value-added by [his] personal participation in the construction project." Appealed Order at 4, ¶ 21. Husband argues that the trial court's "findings do not permit a reasonable inference that [it] considered Husband's transformation of the largest marital asset in awarding Wife most of the marital estate, despite the court's 'passing reference' to Husband's contribution." Br. of Appellant at 25. Husband's argument on this issue is merely a request for this court to reweigh the evidence of his sweat equity even more favorably, which we cannot do. *See Goodman*, 94 N.E.3d at 742.

[22] Husband also argues that the trial court erred in allocating his student loan debt entirely to him on the basis that "he now ha[s] the degree" and that the trial court improperly relied on this debt in support of an unequal division of the marital estate. Br. of Appellant at 25. The trial court specifically found that the

"largest marital debt aside from mortgage debts is Husband's student loan debt" for a degree he received ten months prior to filing for divorce, and determined it was "just and reasonable for [Husband] to be solely responsible for the debt." Appealed Order at 2, ¶ 13. However, in *Attachment I*, the trial court properly included the debt in the marital estate and then assigned it to Husband. By including it in the marital pot, and pursuant to its unequal division of the marital estate, Husband is now only responsible for 35% of this debt and Wife incurs 65% of Husband's student loan debt *despite* the trial court's finding to the contrary – that Husband shall be solely responsible for his debt. By the same token, as a result of this division, Husband also gains 35% of Wife's retirement and securities accumulated before the marriage and solely through her efforts.

[23] Although Husband's degree is not a marital asset subject to division, the trial court is entitled to consider Husband's increased earning capacity as a result of his degree in deviating from an equal division of the marital estate. *See* Ind. Code § 31-15-7-5(5). "[A] degree is not an asset[,]" *Nornes v. Nornes*, 884 N.E.2d 886, 889 (Ind. Ct. App. 2008), but "[t]his is not to say that a trial court may not give due consideration to the effect that the degree may have in determining the earnings ability of the party holding the degree[,]" *id*. at 889 n. 2. This is exactly what the trial court did in this case: it determined that Husband earns nearly twice as much as Wife, is ten years younger than Wife, and therefore, he has more time to earn and save.

[24] The trial court carefully balanced the statutory factors and concluded that the substantial disparity between the parties' incomes, capacity to earn, and

potential future earnings served as the basis for allocating the student loan debt solely to Husband. Furthermore, in addition to these factors, the trial court found that Wife had accumulated a significant portion of her retirement and securities prior to the marriage through her sole efforts. In sum, under the totality of the circumstances, we conclude the trial court's deviation from the presumption of an equal division of the marital estate was just and reasonable. Accordingly, the trial court did not abuse its discretion.

# Conclusion

For the reasons set forth above, we conclude the trial court did not abuse its discretion in its treatment of the marital residence's equity or in dividing the marital estate unequally. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

Mathias, J., and Pyle, J., concur.