

**FILED**

Nov 22 2019, 8:23 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel K. Stein
Lynn and Stein, P.C.
Wabash, Indiana

ATTORNEYS FOR APPELLEE

Katherine A. Harmon
Jared S. Sunday
Mallor Grodner, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Patricia J. Smith,

*Appellant-Respondent,*

v.

Christopher M. Smith,

*Appellee-Petitioner.*

November 22, 2019

Court of Appeals Case No.
18A-DN-2273

Appeal from the Tipton Circuit
Court

The Honorable Thomas R. Lett,
Judge

Trial Court Cause No.
80C01-1409-DR-290

**Mathias, Judge.**

[1] Patricia Smith ("Wife") appeals the Tipton Circuit Court's dissolution order dividing the parties' marital estate. Specifically, she raises four issues, which we consolidate and restate as:

    I. Whether the trial court abused its discretion when it denied Wife's motion to continue the final hearing,

II.  Whether the trial court abused its discretion when it awarded approximately seventy-five percent of the marital estate to Christopher Smith ("Husband"), and,

III.  Whether the trial court abused its discretion when it assigned any net carryover losses to Husband to offset future tax liabilities.

[2]  We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## Facts and Procedural History

[3]  Husband and Wife were married in October 2009. Husband is a PGA golfer, and both parties brought significant assets to the marriage. The parties resided in Husband's residence, which he owned prior to the marriage. Husband owned a residence, PGA pension accounts, and approximately $1,700,000 in additional assets on the date the parties were married. Wife had assets prior to the marriage in the form of stocks, retirement accounts, insurance policies, and luxury vehicles. These assets were sold during the marriage for approximately $900,000.

[4]  During the marriage, the parties spent nearly $500,000 to renovate and remodel the marital residence. The parties also had no income during certain periods of their marriage.

[5]  The parties owned two businesses: SmartView Imaging and One Five Group. The parties invested approximately $450,000 in SmartView Imaging. The business was not successful. One Five Group was formed to manage Husband's

golf career. Husband's golf career was not profitable during the course of the marriage.

[6] On the date the marriage ended, the parties had significant credit card debt, a home-equity line of credit, and loans totaling over $350,000. The only remaining assets with significant value were the marital residence and Husband's PGA retirement account. Husband also had an unvested pension with the PGA.

[7] Husband filed a petition to dissolve the parties' marriage on September 8, 2014, and Wife filed a counter-petition on December 5, 2014. During the dissolution proceedings, Wife filed seven motions to continue the final hearing, and six of those were filed after August 2016. Husband objected to several of the requests to continue, including the last two motions.

[8] The final hearing was ultimately set for February 15, 2018.[1] Two weeks prior to the final hearing, Wife's attorney filed a motion to withdraw his appearance, which the trial court granted. Wife attempted to find a new attorney but was not successful. She filed her seventh motion to continue the final hearing so that she would have more time to find a new attorney. Husband objected to the motion, and Wife's motion was denied on February 9, 2018. Wife appeared without counsel at the February 15, 2018 final hearing.

---

[1] Over Wife's objection, the trial court dissolved the parties' marriage on September 19, 2016, but bifurcated the proceedings and did not divide the marital estate until August 23, 2018.

On August 23, 2018, the trial court issued findings of fact and conclusions of law dividing the marital estate. In pertinent part, the trial court found:

11. The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing favors a balancing of the factors in favor of Husband.

12. The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift favors a balancing of the factors in favor of Husband, as does the conduct of the Parties during the marriage as related to the disposition or dissipation of their property[.]

13. At the time of the parties' marriage, Husband owned the home located at 208 South Bellerive in Peru Indiana, as well as the property located at 8250 West Blair Pike in Peru Indiana. Husband owned the Bellerive property with his deceased wife and owned the Blair Pike property in his individual name.

14. Per John Oldfather, appraiser, the value of the Bellerive property did not vary significantly from the time the parties were married until the time the petition for dissolution of marriage was filed.

15. Additionally, Husband brought into the marriage investment accounts for his children worth $617,000. These accounts were completely depleted during the marriage to satisfy marital expenses and to assist Wife in starting a company, Smartview Imaging.

16. Husband also brought into the marriage various investment accounts, including a pension with the PGA.

17. Husband also received $504,000 during the marriage from the sale of a family owned business, Rock Industries.

18. Per Dick Hammond, the parties' accountant, as illustrated in an exhibit which was submitted to the court, Husband brought over $1.7 million into the marriage to Wife.

19. While Wife brought some money into the marriage, she did not demonstrate to the Court the amount of the same.

20. Additionally, Wife failed to pay the car loan on the parties' Mercedes Benz, causing Husband to be sued. She also sold the equipment related to Smartview Imaging, receiving $25,000 for the same, but failed to put those proceeds towards paying off the loan associated with the equipment. As a result, Husband was sued for the same and a judgment was received against him for $35,830.30.

21. There is also some question as to where the remaining accounts receivable from Smartview Imaging went, as Wife had sole access to the bank account for the same and thus had control over all funds received.

22. Additionally, Wife disposed of Husband's personal property in excess of $29,000 without his knowledge or agreement.

23. Husband has the burden of presenting relevant evidence to rebut the presumption that an equal division of the marital property between the parties is just and reasonable.

24. Husband has rebutted the presumption in favor of an equal division of the marital estate by virtue of the evidence in support of all the factors above.

25. Husband presented a marital spreadsheet with corresponding exhibits. Wife did not provide the same information.

26. The Court finds that the net value of the marital estate to be the value of the total of all assets minus debts. As such, the Court finds that the net marital estate is $512,711.27.

27. Husband is entitled to 74% of the marital estate as an unequal, yet equitable distribution of the marital estate.

Appellant's App. Vol. II, pp. 32–34. The trial court awarded a majority of the marital assets and debts to Husband. In addition, the court found that the parties had previously divided their household goods and jewelry and were entitled to property currently in their possession. Wife now appeals.

## Wife's Denied Motion for Continuance

First, Wife argues that the trial court abused its discretion when it denied her motion to continue the final hearing after her counsel was allowed to withdraw his appearance. A trial court has the discretion to grant or deny a continuance, and its decision will not be overturned on appeal absent clear abuse of that discretion. *Trinity Baptist Church v. Howard*, 869 N.E.2d 1225, 1230 (Ind. Ct. App. 2007), *trans. denied*.

"[W]ithdrawal of legal counsel does not entitle a party to an automatic continuance[.]" *Riggin v. Rea Riggin & Sons, Inc.*, 738 N.E.2d 292, 311 (Ind. Ct. App. 2000). In considering denials of motions to continue due to withdrawal of legal counsel, Indiana courts have analyzed: whether the withdrawal occurred

at a crucial stage in the proceedings; whether the movant had engaged in dilatory tactics; whether the non-movant would have been prejudiced by a delay; whether new counsel would have had adequate time to prepare for trial taking into account the complexity of the case; whether the attorney's withdrawal was expected or foreseeable; whether the movant was at fault; and what efforts the movant took to secure new counsel. *See Hess v. Hess*, 679 N.E.2d 153, 154 (Ind. Ct. App. 1997); *Homehealth, Inc. v. Heritage Mut. Ins. Co.*, 662 N.E.2d 195, 198 (Ind. Ct. App. 1996), *trans. denied*.

[12] Throughout these proceedings, Wife filed seven motions to continue the final hearing. Husband also filed two motions to continue the final hearing. Husband agrees that the continuances that were filed prior to August 2016, including Wife's first motion, were necessary and the parties were equally responsible for that delay. Appellee's Br. at 22. From August 2016 to the final hearing in February 2018, the final hearing was continued five times at Wife's request.

[13] Specifically, on August 16, 2016, Wife filed a motion to continue the final hearing arguing that additional time was needed to address discrepancies concerning the disposition of certain assets. On January 6, 2017, approximately two weeks before the final hearing was scheduled to take place, Wife moved to continue the final hearing because discovery issues were not complete and the parties' 2015 joint taxes had not been filed. On May 1, 2017, Wife filed another continuance approximately one week before the final hearing date because discovery was not complete. Husband did not object to this motion. Four days before the July 31, 2017 final hearing date, Wife filed another motion to

continue due to discovery issues. Husband also did not object to this continuance. Two days before the November 2, 2017 final hearing date, Wife filed another continuance requesting time to obtain a copy of an appraisal for Rock Hollow Golf Course, which Husband partially owns. The trial court granted the motion, and the final hearing was set and finally held on February 15, 2018.

[14] Importantly, after Wife filed the request for a continuance on October 31, 2017, Husband requested a discovery deadline, which the trial court granted. The parties were ordered to complete and exchange discovery and exhibits by December 22, 2017. Wife did not comply with the court's discovery deadline.

[15] Approximately two weeks before the final hearing, on January 31, 2018, Wife's counsel filed a motion to withdraw his appearance because "attorney client communications have broken down to the point that counsel can no longer provide appropriate representation to" Wife. Appellant's App. Vol. 2, p. 41. The trial court granted counsel's motion to withdraw his appearance.

[16] One week later, on February 7, 2018, Wife filed a motion to continue the February 15 final hearing stating that she needed additional time to find new counsel. In her motion, Wife did not indicate that she had made any attempt to

hire new legal counsel.[2] Husband objected to the motion. The trial court denied the motion on February 9, 2018.

[17] When Wife filed her February 7, 2018 motion to continue, the case had been pending for almost three and a half years. Although the parties' marital assets were more complicated than most, Wife had ample time while represented by counsel to gather evidence to support the value of those assets and propose a distribution. Yet, she did not comply with the trial court's discovery deadline. A week after counsel withdrew his appearance, Wife filed her motion to continue but did not inform the trial court that she had unsuccessfully attempted to hire new counsel.

[18] Wife is understandably upset that she had to proceed pro se at the final dissolution hearing, a crucial stage of the proceedings. But Wife also engaged in dilatory conduct during these proceedings, including failing to comply with the court's discovery order. Many of Wife's claims in support of her argument that her last motion to continue should have been granted revolve around her inability to present evidence at the final hearing. But even with counsel present, the trial court would have refused the evidence because Wife failed to exchange

---

[2] After the final hearing, but before the court's final judgment was issued, Wife filed a "motion to correct errors," requesting that the court reconsider its denial of her motion to continue the final hearing. Appellant's App. Vol. 2, pp. 48–49. The trial court properly treated the motion as a motion to reconsider. *See Citizens Indus. Grp. v. Heartland Gas Pipeline, LLC*, 856 N.E.2d 734, 737 (Ind. Ct. App. 2006), *trans. denied*. In her motion, for the first time, Wife stated that she contacted five attorneys and Legal Services of Indiana before she filed her last motion to continue, but all declined to represent her in this case. Wife also alleged that her prior counsel failed to respond to her attempts to communicate with him. Appellant's App. Vol. 2, p. 52.

discovery and exhibits while she was represented by counsel. Husband argues that he was prejudiced by Wife's multiple motions to continue because he incurred additional attorney fees when the final hearing was continued twice on Wife's motion just days before it was scheduled to occur. Although another judge might have made a different decision under these circumstances, we cannot conclude that the trial court abused its discretion when it denied Wife's February 7, 2018 motion to continue the final hearing.[3]

## Division of the Marital Estate

[19]    Next, Wife argues that the trial court abused its discretion in its division of the marital estate. The division of marital assets is within the trial court's discretion, and we will reverse a trial court's decision only for an abuse of discretion. *O'Connell v. O'Connell*, 889 N.E.2d 1, 10 (Ind. Ct. App. 2008). The "party challenging the trial court's division of marital property must overcome a strong presumption that the trial court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal." *Id.* (internal quotations omitted). On review, we will neither reweigh evidence nor assess the credibility of witnesses, and "we

---

[3] Wife relies heavily on our court's opinion in *Hess v. Hess*, 679 N.E.2d 153 (Ind. Ct. App. 1997) in support of her arguments. But in that case, trial counsel withdrew from representation during settlement negotiations just four days before the final hearing, the final hearing had not been continued numerous times, and there is nothing in the opinion to suggest that either party had failed to comply with the trial court's discovery deadline.

will consider only the evidence most favorable to the trial court's disposition of the marital property." *Id.*

[20] In dissolution proceedings, the trial court is required to divide the property of the parties "in a just and reasonable manner[.]" Ind. Code § 31-15-7-4(b). This division of marital property is a two-step process. *O'Connell*, 889 N.E.2d at 10. First, the trial court must ascertain what property is to be included in the marital estate; second, the trial court must fashion a just and reasonable division of the marital estate. *Id.* at 10–11.

[21] First, Wife argues that the trial court failed to include a Ford Raptor vehicle in its division of the marital estate. Husband concedes that the vehicle should have been included in the marital estate. Appellee's Br. at 27. Accordingly, we remand this issue to the trial court to assign a value to the vehicle and distribute the value between the parties accordingly.

[22] Next, Wife argues that the trial court failed to distribute $505,742.07, which was reflected as an asset on Petitioner's Exhibit 3. Specifically, the trial court admitted exhibits prepared by Dick Hammond, the parties' accountant, that established that Husband's assets totaled approximately $1,780,000 on the date of the marriage.[4] According to the accounting, Husband spent approximately

---

[4] This amount does not include the marital residence or Husband's PGA retirement accounts. Tr. p. 26.

$1,275,000 during the marriage. Therefore, Wife argues the remaining funds should have been included in the marital estate and divided between the parties.

[23] Husband argues that Wife has misstated their accountant's testimony in support of her claim. Husband observes that Hammond's knowledge was limited to the parties' financial transactions that had tax implications. Hammond testified that he "was using information that would be tax-related" so the parties certainly spent funds that would not be reflected on his financial summary. Tr. p. 24. Hammond stated that the parties spent substantial sums during the marriage and, with the exception of the marital residence and Husband's retirement accounts, the assets that Husband brought into the marriage were depleted.[5] Tr. p. 26. Importantly, Wife presented no evidence that these funds existed on the date the parties separated.

[24] For these reasons, we conclude that Wife's claim that the trial court failed to include and distribute $505,742.07 is not supported by substantial evidence. The evidence supports the conclusion that these funds were spent by the parties during the marriage.[6]

_____

[5] In a footnote in her brief, Wife challenges the trial court's finding number 15 stating that "Husband brought into the marriage investment accounts for his child worth $617,000. These accounts were completely depleted during the marriage to satisfy marital expenses and to assist Wife in starting a company, Smartview Imaging." Appellant's App. p. 32. Wife argues that those funds were partially withdrawn before the marriage and used at least in part for Husband's children's college and medical expenses. We agree that the trial court's finding concerning how those funds were used is not entirely supported by the evidence. However, for our purposes in this appeal, it is important only that those funds had been depleted by the date of separation, and therefore, they were not subject to division by the trial court.

[6] In her reply brief, Wife argues also that the trial court failed to include Husband's 11.8% interest in Rock Hollow Golf Course in its order. But Husband testified that the golf course is a "highly unprofitable" business

Finally, we consider Wife's argument that the trial court erred when it awarded approximately 75% of the marital estate to Husband. "The court shall presume that an equal division of the marital property between the parties is just and reasonable." Ind. Code § 31-15-7-5.

> However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
> > (A) before the marriage; or
> >
> > (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

which loses between $80,000 and $200,000 per year. Tr. p. 64. Although Husband's interest should have been included in the marital estate, the only evidence presented of the asset's value is that it has little to no value or possibly negative value. Therefore, we conclude that the trial court's error does not require correction on remand. Moreover, we remind Wife that issues may not be raised for the first time in a reply brief. *See Receveur v. Buss*, 919 N.E.2d 1235, 1249 n.6 (Ind. Ct. App. 2010), *trans. denied*.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

*Id.*

[26] "The statutory factors are to be considered together in determining what is just and reasonable; any one factor is not entitled to special weight." *In re Marriage of Lay*, 512 N.E.2d 1120, 1125 (Ind. Ct. App. 1987). "The party seeking to rebut the presumption of equal division bears the burden of proof of doing so, and a party challenging the trial court's decision on appeal must overcome a strong presumption that the trial court acted correctly in applying the statute[.]" *In re Marriage of Marek*, 47 N.E.3d 1283, 1288 (Ind. Ct. App. 2016), *trans. denied*.

[27] In determining that an unequal division of the marital estate was warranted, the trial court considered that Husband brought over $1.7 million into the marriage and "[w]hile Wife brought some money into the marriage, she did not demonstrate to the Court the amount of the same." Appellant's App. p. 33. Wife argues that this finding is not supported by the evidence because Hammond's exhibit also established that she brought assets to the marriage totaling $899,703.36. Husband does not directly address this argument in his brief but implicitly concedes that Wife brought nearly $900,000 into the marriage. *See* Appellee's Br. at 32. However, it is clear that the assets Wife brought into the marriage were also depleted during the parties' marriage.

[28] Despite the error in the finding, the trial court properly considered that the assets Wife brought into the marriage were substantially less than Husband's as they totaled approximately 25% of the parties' combined assets. And nearly $900,000 of Husband's net assets were insurance and trust proceeds that were obtained due to the death of his first wife.

[29] Neither party presented evidence that they earned income during the marriage. Husband's golf career was not profitable during the marriage. The parties started SmartView Imaging, but the business was not profitable and eventually ceased operations.

[30] The parties spent significant sums during the marriage on Husband's golf career, remodeling the marital home, luxury goods and vehicles, and to operate SmartView Imaging. The assets Wife brought to the marriage were depleted, and the only assets remaining from Husband were the marital residence, which is subject to a mortgage and equity loans, and his vested PGA retirement.[7]

[31] After the parties separated, Wife failed to pay the loan on one of the parties' vehicles, and as a result, Husband was sued. She also sold SmartView Imaging equipment for $25,000. She did not use those proceeds to pay off the loan on the equipment. Husband was sued on that loan as well, and a judgment was entered against him in the amount of $35,830.30. In addition, when the parties

---

[7] Husband also has an unvested PGA retirement account that was worth approximately $1.5 million on the date of separation.

separated, Wife disposed of Husband's personal property worth approximately $29,000 without his knowledge or consent.

[32] Finally, the trial court assigned all marital debts, including credit card debts, the mortgage on the marital residence, and the home equity loan to Husband. The court did not assign any marital debts to Wife.

[33] For all of these reasons, we agree with the trial court that Husband rebutted the presumption that an equal division of the marital estate is just and reasonable. And Wife has not met her burden of persuading us that the trial court abused its discretion by awarding her only 25% of the marital estate.

## Net Carryover Losses

[34] Finally, Wife argues that the trial court abused its discretion when it assigned any net carryover losses from SmartView Imaging to Husband to offset future tax liabilities. Wife argues that her financial contributions to the business greatly exceeded Husband's contributions, and therefore, she should have been awarded any net carryover losses.

[35] Pursuant to Indiana Code section 31-15-7-7, the trial court, "in determining what is just and reasonable in dividing property under this chapter, shall consider the tax consequences of the property disposition with respect to the present and future economic circumstances of each party." However, the trial court is required to consider only the direct or inherent and necessarily incurred tax consequences of the property disposition. *Knotts v. Knotts*, 693 N.E.2d 962, 968 (Ind. Ct. App. 1998), *trans. denied*.

[36]     First, we observe that the trial court's finding number 33 assigning net carryover losses to Husband does not specifically reference SmartView Imaging. There was very little evidence presented concerning the defunct company beyond one debt and one remaining bank account. And there was no evidence presented establishing any direct or inherent tax consequences concerning the disposition of the remaining assets and liabilities of that company. The only evidence concerning SmartView Imaging was the amount of the initial investment lost and Husband's exclusive personal liability for the unpaid cost of SmartView Imaging's equipment. We therefore have no basis on the evidence to believe that the trial court abused its discretion regarding SmartView Imaging net carryover losses.

[37]     The only evidence concerning "capital losses" on either party's tax returns were losses Husband suffered with regard to Rock Hollow and golf losses. Tr. p. 66. Husband requested that the court assign those losses to him. It is therefore reasonable for us to conclude that these losses are also the losses referenced by the trial court in its order. And the trial court did not abuse its discretion when it assigned those losses to Husband.

## Conclusion

[38]     We remand this case to the trial court with instructions to include the value of the Ford Raptor in the marital estate and distribute it between the parties. In all other respects, we affirm the trial court's order dividing the marital estate.

[39] Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

May, J., and Brown, J., concur.